IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| KELLY BIGGS, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 20-50360 |
| | ) | |
| JOSEPH BIGGS, | ) | |
| | ) | |
| *Defendant*. | ) | |

## COMPLAINT

Plaintiff Kelly Biggs ("Plaintiff"), by and through her undersigned counsel, hereby respectfully complains and alleges against Defendant, Joseph Biggs ("Defendant"), as follows:

### Preliminary Statement

This action arises out of Defendant's longstanding physical abuse and repeated batteries of Plaintiff, culminating in Defendant physically forcing Plaintiff to undergo a tubal ligation against her will. This action seeks to vindicate Plaintiff's rights and compensate her for this battery, the years of abuse, and her loss of ability to have children.

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332 because Plaintiff is a citizen of Illinois, Defendant is a citizen of Indiana, and the amount claimed in damages is greater than $75,000.

2. Venue is proper in this district because some or all of the actions complained of occurred in the Northern District of Illinois.

### General Allegations Common to All Counts

3. Plaintiff and Defendant began dating on or about December 31, 2012.

4. On August 17, 2013, Plaintiff and Defendant were legally married.

5. The next day, Defendant became physically abusive towards Plaintiff.

6. On or about August 18, 2013, Defendant shoved Plaintiff into a pile of dog feces because Plaintiff did not make him a sandwich quickly enough.

7. On or about September 21, 2013, Defendant shoved Plaintiff into a wall because Plaintiff requested that Defendant assist her in cleaning their apartment.

8. In November 2013, Plaintiff learned she was pregnant.

9. Despite the pregnancy, this physical abuse continued over several months.

10. In July 2014, Plaintiff made plans to take her child and travel to see her family, away from Defendant. Defendant learned of Plaintiff's plans, and threatened to injure and/or kill Plaintiff and their child if Plaintiff went to see her family.

11. As such, Plaintiff was too afraid to leave Defendant.

12. So as to ensure Plaintiff would not leave him, on or about October 14, 2014, Defendant physically held down Plaintiff and forcibly tattooed her hip with a "locket" design. Plaintiff begged and pleaded with Defendant to stop. Defendant refused.

13. On or about March 10, 2015, Defendant slammed Plaintiff into a wall.

14. Throughout 2015, Defendant continued to physically attack Plaintiff on a regular basis.

15. In or around August 2015, Defendant punched a hole in the wall of the parties' bathroom, and told Plaintiff that her face would be his next target.

16. During this time period, Defendant repeatedly made statements such as "what I will do to you won't be pretty" and "you're just a free piece of ass, I can do whatever I want to you."

17. Defendant punched, kicked, shoved, and threatened Plaintiff throughout 2016.

18. On or about September 3, 2016, Plaintiff went into labor with the parties' second child.

19. Defendant made multiple threats against Plaintiff whilst she was in the hospital.

20. Defendant told Plaintiff that if she did not undergo a tubal ligation, he would injure and/or kill Plaintiff.

21. Plaintiff did not want to undergo a tubal ligation.

22. Over the course of the parties' marriage, Defendant had repeatedly threatened to kill Plaintiff if she did not comply with his directives and orders.

23. As a result of Defendant's repeated threats and assaults, Plaintiff reasonably believed that Defendant would follow through on his threats.

24. As such, the day after giving birth to the parties' second child, Plaintiff underwent a tubal ligation.

25. Plaintiff underwent this procedure solely out of fear for the bodily harm Defendant would inflict upon her if she refused.

26. On or about December 16, 2016, the parties' second child passed away.

27. In response, Defendant's brother told Plaintiff that he would slit Plaintiff's throat and "make it look like an accident."

28. Defendant continued to physically attack Plaintiff throughout 2017, including throwing her into a wall on multiple occasions, and punching Plaintiff in the face.

29. On or about June 24, 2018, Defendant told a cashier at Speedway that he was going to kill Plaintiff.

30. Specifically, the Defendant told the cashier "I'm going to slit [Plaintiff's] throat."

31. In response, Plaintiff fled the Defendant's home in fear for her life.

32. Plaintiff fled to a Wal-Mart in Plymouth, Indiana, and spent the night in the Wal-Mart parking lot.

33. Defendant came to the Wal-Mart with a pistol to search for Plaintiff.
34. Defendant sought out Plaintiff's co-workers, and instructed them to inform Plaintiff that he was going to kill her.
35. In the last week of July, 2018, a police officer called Plaintiff and informed her that she was in danger.
36. The officer told Plaintiff that Defendant said "if I find [Plaintiff] before you do, you're going to need a body bag."
37. The officer told Plaintiff that she needed to obtain an order of protection from Defendant.
38. In response, Plaintiff requested and received a plenary order of protection from the Circuit Court of McHenry County, Illinois.
39. The officer also told Plaintiff that she needed to run for her life.
40. Plaintiff spent the next three months running from Defendant in fear for her life.
41. During those months, Defendant continued to call Plaintiff's friends on a daily basis demanding to know Plaintiff's whereabouts.
42. In those calls, Defendant repeated his threats to kill Plaintiff.
43. As such, Plaintiff was unable to live in one place, as she was constantly in fear for her life.
44. On or about October 22, 2018, Defendant peered through windows of the place Plaintiff was staying.
45. Defendant also observed Plaintiff from behind a tree.
46. Defendant was armed and had arrived with intent to kill Plaintiff.
47. The next day, Defendant's girlfriend called Plaintiff.
48. Defendant's girlfriend warned Plaintiff that she was in danger, and that "he said he's going to kill you the first chance he gets."

49. Throughout the week of Thanksgiving 2018, Defendant called Plaintiff's friends to brag that he had "put a hit out" on Plaintiff.

50. Defendant continued to tell Plaintiff and her friends that he had hired a man to kill her through December 2018.

51. On or about March 27, 2019, the parties divorced.

52. The Indiana divorce decree did not address, or give the parties a reasonable opportunity under Indiana law to address, the facts set forth herein.

53. Plaintiff has suffered from depression, anxiety, nightmares, and chronic post-traumatic stress disorder as a direct and proximate result of Defendant's conduct set forth herein.

54. Plaintiff has also been rendered unable to have more children, as reversal of a tubal ligation is not covered by insurance and Plaintiff cannot afford it.

55. Defendant continued to threaten to kill Plaintiff through the date of filing of this action.

56. For example, when Plaintiff would see her son on FaceTime, Defendant would take a gun and point it at the screen.

57. Plaintiff's son also told Plaintiff on one of these calls that "Daddy said he's going to kill you."

58. On another call, Plaintiff's son asked Plaintiff "Why does Daddy want to kill you?"

59. Defendant's conduct constitutes a single course of continuing conduct pursuant to *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 265 (Ill. 2003).

## COUNT I – ASSAULT

60. The Plaintiff restates and re-alleges paragraphs 1-59 of this Complaint as if fully set forth herein.

61. As set forth herein, Defendant repeatedly placed Plaintiff in reasonable fear of imminent harmful bodily contact.

62. As a result of Defendant's actions, Plaintiff suffered damages, including emotional distress.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendant in an amount to be proven at trial but not less than $100,000, plus costs of suit.

### COUNT II – BATTERY

63. The Plaintiff restates and re-alleges paragraphs 1-62 of this Complaint as if fully set forth herein.

64. As set forth herein, Defendant repeatedly caused harmful bodily contact to Plaintiff.

65. As a result of Defendant's actions, Plaintiff suffered damages, including physical and emotional damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendant in an amount to be proven at trial but not less than $100,000, plus costs of suit.

### COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66. The Plaintiff restates and re-alleges paragraphs 1-65 of this Complaint as if fully set forth herein.

67. Defendant's conduct was extreme, outrageous, and beyond all bounds of common decency.

68. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered physical and emotional damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendant in an amount to be proven at trial but not less than $100,000, plus costs of suit.

        Respectfully submitted,
        KELLY BIGGS

        /S/ Sheryl Ring
        By her attorney,
        Sheryl Ring, Esq.

Sheryl Ring, Esq. #6311043/62447
518 South Route 31, Suite 113
McHenry, Illinois 60050
(847) 975-2643
sheryl@sherylringlaw.com